UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALPENA REGIONAL MEDICAL CENTER,

                Plaintiff,

                                              Case No. 12-12498

v.                                         Honorable Thomas L. Ludington

HORIZON MENTAL HEALTH MANAGEMENT,

                Defendant.

_____ /

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This contract dispute arises out of the agreement between Plaintiff Alpena Regional Medical Center and Defendant Horizon Mental Health Management. The question is whether a complaint's enumeration of eleven specific ways that Defendant allegedly breached the contract is sufficient to state a breach of contract claim on which relief can be granted. For reasons discussed below, the question is answered in the affirmative.

### I

As Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in evaluating whether the complaint states a claim on which relief may be granted the following facts from the complaint are assumed to be true.

### A

Plaintiff operates a 146-bed acute care hospital in Alpena, Michigan. Compl. ¶¶ 1, 6. Staffed by about 100 physicians, 900 employees, and 300 volunteers, the hospital provides a number of health care services, including inpatient and outpatient mental health care services. *Id*. ¶¶ 6, 7. Defendant is a Texas limited liability company that provides services to health care

providers like Plaintiff. *Id*. ¶¶ 3, 8. Specifically, Defendant assists in the operation of inpatient and outpatient psychiatric services. *Id*. ¶ 8.

**B**

In 2008, Plaintiff and Defendant entered into a services contract with a five-year term. Compl. ¶¶ 9–10; *see id*. Ex. A (attaching copy of contract). Under the contract, Defendant agreed to supply personnel and services to Plaintiff to assist in the operation of the psychiatric unit of Plaintiff's hospital. Compl. ¶ 11. Plaintiff agreed to pay Defendant a per diem fee for each patient receiving inpatient services, a flat monthly fee for patients receiving outpatient services, and various other fees and expenses, specifying:

(a)    Inpatient Rate — For the period beginning with the Commencement Date through the end of this Agreement, the Hospital shall pay to Horizon on a monthly basis a fee for its services equal to $68.00 per Program inpatient patient day (the "Inpatient per diem fee") for each respective month.

(b)    Clinical Outcomes Measurement Fee — For the period beginning on which CQI+$^{sm}$ start-up training is completed, through the end of this Agreement, the Hospital shall pay to Horizon a monthly fee for the CQI+$^{sm}$ adult psychiatric module equal to $2,950.00 (the "CQI+ Fee"). . . .

(c)    Outpatient Fee — For the period beginning with the Commencement Date through the end of this Agreement, the Hospital shall pay to Horizon a monthly fee for its services equal to $3,000.00 per calendar month (the "Outpatient Monthly Services Fee") for the respective calendar month. . . .

(d)    Pass-through Expenses — For the period beginning with the Commencement Date through the end of this Agreement, in addition to Horizon's fees noted in subsections (a), (b), and (c) herein, the Hospital shall pay to Horizon each month the salary and benefit costs, benefit costs to be calculated at twenty-eight percent (28%) of salary ("Pass-through expenses") of the following positions: Program Director, Intake Process Coordinator, Community Education Manager, Clinical Nursing Director, Outpatient Clinical Coordinator.

Contract § VI(a)–(d).

Defendant's program director, the contract provides, must comply with the same requirements as the directors of the hospital's other departments, specifying:

> The Horizon Program Director shall be responsible to the appropriate member of the Hospital administration designated by the Hospital and shall function in a departmental head capacity, subject to any applicable collective bargaining agreement.  The Horizon Program Director shall comply with all reporting requirements of the Hospital administration and shall be accountable to the Hospital administration in the same manner as any department of the Hospital.

Compl. ¶ 13 (quoting Contract § V(c)).  And all of Defendants' employees, the contract further provides, must comply with Plaintiff's rules and all applicable laws, specifying:

> Horizon shall conduct its activities in compliance with all rules, policies and regulations of Hospital, its medical staff, and all applicable governmental rules, regulations, statutes, and ordinances.

Compl. ¶ 14 (quoting Contract § V(f)).

A choice-of-law term provides that the contract will be "governed by and construed in accordance with the laws of the state of Michigan."  Contract § XIII(a).  And a termination provision provides that either party may terminate the agreement "upon the failure of the other to cure any breach or default of any material term, condition or covenant of this Agreement . . . within thirty (30) days after written notice by the terminating party to the other."  *Id*. § X(a).

## C

Asserting that Defendant breached the contract, the complaint alleges that Defendant "persistently failed to perform its duties and obligations."  Compl. ¶ 15.  Elaborating, paragraph sixteen of the complaint lists eleven specific (but non-exhaustive) ways Defendant did not perform its duties and obligations:

> a.   "Failure to create policies requested by the hospital, including, by way of example, a policy to ensure that patients swallowed their medication rather than hoarding or 'cheeking' the medication."

b.      "Failure to implement timely and follow [Plaintiff's] Bedside Medication Verification process, a significant patient safety nursing process change."

c.      "Failure to timely complete required annual employee evaluations."

d.      "Failure by Horizon's program director to attend required hospital meetings and failure to conduct required monthly staff meetings."

e.      "Failure to provide quality reports to [Plaintiff]."

f.      "Failure to provide operational reports to [Plaintiff]."

g.      "Failure to respond to inquiries from [Plaintiff] management relating to performance of the psychiatric unit."

h.      "Failure to provide requested information needed by [Plaintiff] in connection with rate-setting and budgeting."

i.      "Failure to update forms to ensure compliance with Michigan's Mental Health Code."

j.      "Failure to implement a process that ensured accurate and complete inquiries and documentation in the patient intake process."

k.      "Failure to properly document treatment and/or respond to appeal letters in a manner required for the hospital to obtain reimbursement for services."

Compl. ¶ 16.  Plaintiff repeatedly asked Defendant to cure these breaches.  *Id.* ¶ 18.  Defendant did not do so.  *Id.* ¶ 19.

## D

On May 1, 2012, Plaintiff provided formal notice to Defendant that it was in material breach of the contract.  Compl. ¶ 19.  After quoting subsections V(c) and (f), Plaintiff enumerated nineteen specific illustrations of Defendant's breaches.  Compl. Ex. B (attaching letter sent to Defendant).

Defendant responded about a week later asking for more information and asserting that the illustrations provided by Plaintiff were not tied to material obligations of the contract.  *See*

Compl. Ex. C (attaching correspondence).  On May 21, Plaintiff replied, elaborating point-by-point why each of the nineteen illustrations constituted breaches of the contract.  *Id.*

Defendant did not cure its breach within the thirty days.  Compl. ¶ 24.  On June 8, 2012, Plaintiff terminated the agreement.  *Id.* ¶ 25.  Plaintiff then brought suit.

## E

Invoking this Court's diversity jurisdiction, in June 2012 Plaintiff filed a single-count complaint against Defendant for breach of contract.  ECF No. 1.  After quoting subsections V(c) and (f) of the agreement, the complaint enumerates the eleven specific breaches discussed above.  As relief, Plaintiff requests damages in excess of $75,000.

Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief."  Interpreting this rule's requirements in 1957, the Supreme Court instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

Revisiting the rule's requirements in two recent decisions — *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) — the Supreme Court established that a complaint must be dismissed for failure to state a claim unless it alleges facts sufficient to allege "facial plausibility" of relief.  "Plausibility" requires "more than a sheer possibility that a defendant has acted unlawfully," the Court explained — it requires "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

This standard does not require "detailed factual allegations," but it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

### III

Breach of contract claims have three elements under Michigan law: (1) a valid contract; (2) a breach of that contract; and (3) damages. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Platsis v. E.F. Hutton & Co., Inc.*, 642 F. Supp. 1277, 1309 (W.D. Mich. 1986)).

In this case, Defendant acknowledges that the complaint pleads the existence of a valid contract but asserts that the complaint does not plausibly allege facts suggesting that the contract has been breached or that damages have been suffered. Defendant's arguments are unpersuasive.

### A

Defendant first asserts: "Plaintiff has plainly alleged 'Horizon persistently failed to perform its duties and obligations in accordance with the Services Agreement' but does not identify how the actions enumerated in paragraph 16 of its complaint violated the rules, requirements, policies and regulations of the hospital." Def.'s Mot. to Dismiss 8–9 (quotation marks omitted).

Contrary to Defendant's assertion, the factual allegations in the complaint are more than "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, *quoted in Ramirez v. Int'l Bus. Mach. Corp.*, 829 F. Supp. 2d 555, 562 (E.D. Mich. 2011) (Edmunds, J.);

*see generally* A. Benjamin Spencer, *Understanding Pleading Doctrine*, 108 Mich. L. Rev. 1, 33 (2009) (discussing pleading requirements for breach of contract claims), *quoted in* Pl.'s Resp. to Def.'s Mot. to Dismiss 9.

Paragraph sixteen of the complaint, as noted, alleges that Defendant breached the contract in eleven specific ways.  Compl. ¶ 16 (quoted above).  The first allegation of paragraph sixteen, for example, is that Defendant breached the contract by not "creat[ing] policies requested by the hospital, including, by way of example, a policy to ensure that patients swallowed their medication rather than hording or 'cheeking' the medication."  *Id.* ¶ 16(a).

This is not an "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Rather, it is a detailed factual allegation that, if true, plausibly suggests that Defendant breached § V(f) of the contract, which provides that Defendant must "conduct its activities in compliance with all rules, policies and regulations of Hospital."  Compl. ¶ 14 (quoting Contract § V(f)).

To take another example, the second allegation of paragraph sixteen is that Defendant breached the contract by not "follow[ing] [Plaintiff's] Bedside Medication Verification process."  Compl. ¶ 16(b).  Again, this allegation pleads factual content sufficient to draw the reasonable inference that Defendant breached the contract — Defendant did not follow a hospital policy.

The complaint alleges sufficient facts to plausibly suggest that Defendant breached its contract with Plaintiff.

**B**

Defendant next argues that the complaint should be dismissed because it does not plead damages with sufficient particularity.  Defendant's argument is again unpersuasive.

Although the complaint tersely alleges that Plaintiff's damages exceed $75,000, the factual foundation for the claimed damages is likewise plain — the eleven enumerated breaches alleged in the complaint.

For example, one alleged breach is that Defendant did not "provide quality reports to [Plaintiff]." Compl. ¶ 16(e). Plaintiff's letter of May 21 (attached to the complaint) elaborates: "Under the Agreement, [Plaintiff] pays approximately $3,000/month to receive CQI+ Outcome Measurement System reports. Horizon failed to provide these reports to [Plaintiff]. . . . [A]t least nine months' worth of reports for 2011 (for the first, second and third quarters of 2011) were paid for but not provided and not located in the Program Director's office. Additionally, no report has been provided for 2012." Compl. Ex. C, at 2–3. The damages are plain — Plaintiff alleges that it paid Defendant for reports that Plaintiff did not receive.

Likewise, another alleged breach is that Defendant did not "properly document and/or respond to appeal letters in a manner required for the hospital to obtain reimbursement for services." Compl. ¶ 16(k). Again, damages are plainly alleged — because of Defendant's breach, Plaintiff was not reimbursed for services provided.

## IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss (ECF No. 8) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 12, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 12, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS